**Mark G. ABBEY, et al., Plaintiffs,**

v.

**THE UNITED STATES, Defendant.**

No. 07–272 C.

United States Court of Federal Claims.

Feb. 14, 2012.

Gregory K. McGillivary, Washington, DC, for plaintiffs.

Hillary A. Stern, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendant. Brett Daee, Office of Chief Counsel, Federal Aviation Administration, Washington, DC, of counsel.

## OPINION

HEWITT, Chief Judge.

### I. Background

On November 28, 2011 the court filed a scheduling order that governs the remaining

pretrial proceedings in this matter. *See generally* Order of Nov. 28, 2011, Docket Number (Dkt. No.) 202; *see also Abbey v. United States (Abbey II)*, 99 Fed.Cl. 430, 434–35 (2011) (describing the factual background of this case). Pursuant to the scheduling order, the parties filed the pretrial disclosures and motions listed below, each of which relates to the evidence that is to be admitted at trial.

Before the court are the following pretrial disclosures, each of which was filed on January 20, 2012: Defendant's Witness and Exhibit List, Dkt. No. 211; Plaintiffs' Trial Exhibits, Dkt. No. 212; Plaintiffs' Witness List, Dkt. No. 213; the Parties' Joint Trial Exhibits, Dkt. No. 214; and Plaintiffs' Deposition Testimony to Admit at Trial, Dkt. No. 215.

Also before the court is Plaintiffs' Unopposed Motion for Leave to Admit Limited Deposition Transcripts at Trial, Dkt. No. 217, filed January 24, 2012.

Before the court for determination are the following objections, contested motions in limine and briefing: Defendant's Objections to Plaintiffs' Witnesses and Exhibits (Def.'s Objs.), Dkt. No. 219, filed January 24, 2012; Plaintiffs' Objections to Defendant's Exhibits (Pls.' Objs.), Dkt. No. 220, filed January 24, 2012; Plaintiffs' Motion in Limine to Exclude Witnesses from the Courtroom (Pls.' Mot.), Dkt. No. 226, filed January 25, 2012; Defendant's Motion in Limine Objecting to Certain of Plaintiffs' Witnesses (Def.'s Mot.), Dkt. No. 228, filed January 31, 2012; Plaintiffs' Opposition to Defendant's Motion in Limine Objecting to Certain of Plaintiffs' Witnesses (Pls.' Resp.), Dkt. No. 229, filed February 2, 2012; Defendant's Response to Plaintiffs' Objections to Defendant's Exhibits (Def.'s Resp.), Dkt. No. 230, filed February 2, 2012; Defendant's Opposition to Plaintiffs' Motion *in Limine* to Exclude Witnesses from the Courtroom (Def.'s Opp'n), Dkt. No. 231, filed February 2, 2012; Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion in Limine Objecting to Certain of Plaintiffs' Witnesses (Def.'s Reply), Dkt. No. 234, filed February 7, 2012; Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion *in Limine* (Pls.' Opp'n Reply), Dkt. No. 235, filed February 7, 2012; and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Objections to Defendant's Exhibits (Pls.' Reply), Dkt. No. 236, filed February 7, 2012.

The court rules on the parties' motions as follows.

## II. Discussion

### A. Plaintiffs' Objections to Defendant's Exhibits

Defendant's Exhibit (DX) 1 (Letter of July 8, 1998) is a letter from Anthony Herman, an attorney for the Federal Aviation Administration (FAA), to Mike McNally, President of the National Air Traffic Controllers Association (NATCA). Pls.' Objs. 1; Def.'s Resp. 1–2. Plaintiffs initially objected to the admission of DX 1 (Letter of July 8, 1998)[1] "on the

---

1. Plaintiffs initially objected to Defendant's Exhibits (DX) 9, 10, 20 and 21, noting that "[a]lthough payroll computerized data has been produced by defendant, there are no documents that have been produced in a format that could be readily submitted as an exhibit at trial. Presumably, defendant will produce some summary sheet, but since plaintiffs have not seen this, plaintiffs object on the ground that it has not been produced." Pls.' Objs. to Def.'s Exs. (Pls.' Objs.), Docket Number (Dkt. No.) 220, at 1. Plaintiffs represent in their Reply that "Defendant informed the plaintiffs that it was withdrawing Exhibits 9, 10, 20 and 21. Accordingly, plaintiffs withdraw their objections to Exhibits 9, 10, 20 and 21." Pls.' Reply to Def.'s Resp. to Pls.' Objs. to Def.'s Exs. (Pls.' Reply), Dkt. No. 236, at 3. Because defendant withdrew DX 9, 10, 20 and 21, these exhibits will not be admitted at trial. For this reason, and because plaintiffs withdrew their objections, plaintiffs' objections to DX 9, 10, 20, and 21 are MOOT.

Plaintiffs also initially objected to DX 17 (Federal Aviation Administration [FAA] Core Compensation Plan), DX 18 (Air Traffic Pay Plan) and DX 23 (ATSPP Manual), noting that "[n]one of these exhibits have been produced to plaintiffs, they have not been identified by Bates number so plaintiffs cannot identify these documents. Plaintiffs object because they do not know what these documents are and therefore object on grounds of relevance." Pls.' Objs. 2. Plaintiffs represent in their Reply that "Defendant informed the plaintiffs that it was withdrawing Exhibit 17." Pls.' Reply 3. Plaintiffs also represent that, in accordance with the court's Order of January 26, 2011, Dkt. No. 227, defendant "provided the plaintiffs with copies of Exhibits 18 and 23." Pls.' Reply 3. Plaintiffs therefore "withdraw their objections to [Exhibits 17, 18, and 23]." *Id.* Because defendant withdrew DX 17, it will not be admitted at trial. Plaintiffs' objections as to DX 17, 18 and 23 are MOOT, and DX 18 and DX 23 will be admissible at trial if they

grounds that the letter is hearsay and no exception to the hearsay rules appl[ies]." Pls.' Objs. 1. Plaintiffs noted that "[n]either Mr. Herman nor Mr. McNall[ ]y is a party to this case and neither is listed as a witness testifying in this case." *Id.*

Defendant responds that DX 1 (Letter of July 8, 1998) is admissible because it is not hearsay but rather is a statement of the opposing party offered against that party under Rule 801(d)(2). Def.'s Resp. 1. Defendant argues that DX 1 (Letter of July 8, 1998) is admissible to rebut plaintiffs' contention that the FAA did not negotiate with NATCA with respect to compensatory time and credit hours. *Id.* at 2. According to defendant:

> The letter confirms an agreement to remove the limitation upon the earning of credit hours in the prior collective bargaining agreement between the FAA and NATCA in exchange for an agreement that unused credit hours will not be convertible into pay. The letter contains the word "Agreed," beneath which there is a line upon which Mike McNally's signature appears confirming his adoption of or acquiescence in the contents of the letter.

*Id.*

Plaintiffs reply that "[b]ased upon defendant's asserted use of the document, plaintiffs object to the introduction of the letter as it is not relevant." Pls.' Reply 1. Plaintiffs argue that DX 1 (Letter of July 8, 1998) is irrelevant under Rule 401 because whether "the Union allegedly acquiesced to the Agency's practice of permitting controllers to bank more than 24 credit hours ... does not demonstrate, or even have the tendency to demonstrate, that the Agency took any actions to ascertain the dictates of the law and then ensure that it followed them." *Id.* at 2. Plaintiffs also argue that because "neither employees nor their Unions can waive their rights to ... overtime under the [Fair Labor

Standards Act (FLSA) ]," the fact that the "Union may have agreed to permit the Agency to provide credit hours at all has no bearing on the circumstances surrounding the Agency's violation of the FLSA." *Id.*

■ " 'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R.Evid. 801(c). "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court." Fed.R.Evid. 802. However, the Federal Rules of Evidence carve out several categories of statements that would otherwise constitute hearsay and deem them not to be hearsay. For instance, Rule 801(d)(2) exempts as hearsay:

> An Opposing Party's Statement. The statement is offered against an opposing party and:
>
> (A) was made by the party in an individual or representative capacity;
>
> (B) is one the party manifested that it adopted or believed to be true;
>
> (C) was made by a person whom the party authorized to make a statement on the subject;
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> . . . .

Fed.R.Evid. 801(d)(2). Here, defendant intends to show that Mr. McNally was authorized as the President of NATCA to act for plaintiffs in a representative capacity or that he could also be viewed as an agent on plaintiffs' behalf for the purpose of conducting collective bargaining negotiations.[2] If Mr. McNally's acceptance of the document by his signature was made in an authorized representative or agency capacity and was

---

otherwise comply with the Federal Rules of Evidence.

**2.** Federal Rule of Evidence 801(d)(2) notes that the opposing party's statement "must be considered but does not by itself establish the declarant's authority under (C); [or] the existence or scope of the relationship under (D)." Fed.

R.Evid. 801(d)(2). If defendant wishes to introduce DX 1 (Letter of July 8, 1998) as a statement of a party-opponent, it must also put on evidence that will establish that Mr. McNally had the authority to speak for plaintiffs or that his signature on the letter was within the scope of his agency relationship with plaintiffs.

within the scope of his relationship to plaintiffs, then DX 1 (Letter of July 8, 1998) is a statement of a party-opponent and is not hearsay. Fed.R.Evid. 801(d)(2)(C), (D).

■ "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. The court agrees with defendant that whether defendant acted consistently with a collective bargaining agreement is relevant to the issues to be determined at trial. In particular, such evidence has a tendency to make less probable that defendant "showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]," see *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (defining willfulness), a fact of consequence in determining the damages portion of the action. Accordingly, DX 1 (Letter of July 8, 1998) is relevant.

Because DX 1 (Letter of July 8, 1998) is not hearsay and is relevant, it is admissible if it otherwise complies with the Federal Rules of Evidence.

### B. Defendant's Objections to Plaintiffs' Witnesses

Defendant filed objections to three of plaintiffs' witnesses: Robert Crawford, Andrew LeBovidge and Lawrence Markel. Def.'s Objs. 1. Defendant's objections as filed were very brief and on January 26, 2012 the court ordered defendant to file more detailed objections. Order of Jan. 26, 2012, Dkt. No. 227. Defendant then filed a Motion in limine with a more detailed description of its objec-

tions to plaintiffs' witnesses on January 31, 2012. *See generally* Def.'s Mot.

### 1. Robert Crawford and Lawrence Markel

Plaintiffs propose to call Mr. Crawford and Mr. Markel "if the need arises." Pls.' Witness List 2. Plaintiffs state that Mr. Crawford's and Mr. Markel's testimony will "demonstrate that the FAA required controllers to use compensatory time prior to using annual leave, and that the FAA's actions harmed the controllers financially." *Id.* at 2, 3. Plaintiffs argue that the testimony of Messrs. Markel and Crawford "is relevant to two issues: whether the defendant can show that it acted reasonably and in good faith and whether the plaintiffs can demonstrate that the FAA acted recklessly." Pls.' Resp. 4.[3] Moreover, plaintiffs contend, testimony that shows that defendant believed that "it [could] pick and choose the provisions of Title 5 it wants to apply," in a manner that is inconsistent with the FLSA and "results in employees working overtime and ultimately receiving no compensation for overtime work, is directly relevant" to the issues of good faith and recklessness. *Id.* at 4–5.

Defendant objects to the testimony of Robert Crawford and Lawrence Markel on the grounds of relevance, prejudice and waste of time. *See* Def.'s Objs. 1; Def.'s Mot. 1–4; Fed.R.Evid. 402, 403. Defendant argues that "[t]estimony concerning plaintiffs' alleged loss of leave is not relevant to the appropriate method of calculating damages as plaintiffs' complaint seeks damages only for overtime pay and not for the monetary value of lost leave." Def.'s Mot. 2. Defendant further argues that "any usage of compensatory time, whether voluntary or forced,

---

3. Plaintiffs also argue that this testimony will demonstrate "that the Agency disregarded its own rules and regulations" which, plaintiffs argue, "speaks to the probability that it would have a similar attitude toward compliance with the FLSA." Pls.' Opp'n to Def.'s Mot. in Limine Objecting to Certain of Pls.' Witnesses (Pls.' Resp.), Dkt. No. 229, at 4. Defendant argues that the testimony of Messrs. Markel and Crawford may not be admitted for this purpose under Rule 404(b) because the testimony would constitute inadmissible propensity evidence. Def.'s Reply to Pls.' Opp'n to Def.'s Mot. in Limine Objecting to Certain of Pls.' Witnesses (Def.'s Reply), Dkt.

No. 234, at 2. Federal Rule of Evidence 404(b) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). The court agrees with defendant that, under Rule 404(b), the testimony of Messrs. Markel and Crawford is not admissible to show conduct in conformity in the way plaintiff has described. However, because the court finds that the testimony is relevant to the issues of willfulness and good faith, it is admissible for that purpose. *See infra* Part II. B.1.

would not affect the calculation of damages pursuant to any of the theories advanced by plaintiffs," *id.*, and notes that even if the testimony by Mr. Crawford and Mr. Markel demonstrated that controllers were required to use compensatory time before annual leave, this would not prove that the FAA's actions were "not in good faith, reasonable, or comprised a willful violation of the Fair [L]abor Standards Act," *id.* at 3.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. This low threshold is met by the proposed testimony of Messrs. Markel and Crawford as it relates to the question of whether defendant acted willfully or in good faith.

█ At trial, defendant will seek to establish that it acted in good faith, a standard which requires, *inter alia,* " 'an honest intention to ascertain what the [FLSA] requires and to act in accordance with it.' " *Beebe v. United States,* 226 Ct.Cl. 308, 328, 640 F.2d 1283, 1295 (Ct.Cl.1981) (quoting *Addison v. Huron-Stevedoring Corp.,* 204 F.2d 88, 93 (2d Cir.1953)). Plaintiffs are entitled to present evidence that might rebut any evidence that defendant introduces to show good faith, including evidence that has "any tendency," Fed.R.Evid. 401, to make it more or less probable that defendant acted with "an honest intention to ascertain what the [FLSA] requires," *Beebe,* 226 Ct.Cl. at 328, 640 F.2d at 1295. Plaintiffs will attempt to prove at trial that defendant's conduct was willful under the FLSA, which requires a showing that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin,* 486 U.S. at 133, 108 S.Ct. 1677.

Defendant established a system, in violation of the FLSA, under which plaintiffs were awarded compensatory time or credit hours on a one-to-one basis for overtime hours worked in lieu of monetary overtime compensation. *See Abbey v. United States (Abbey I),* 82 Fed.Cl. 722, 745 (2008). If, as a result of the overtime policies that defendant established, plaintiffs were required (de facto, if not de jure) to use accrued compensatory time before using annual leave, this may have diminished the value of the compensatory hours that plaintiffs accrued by working overtime. Under this system, for instance, some plaintiffs may have been deprived of the opportunity to cash out annual leave that thereafter expired because plaintiffs were required to use compensatory hours first. Requiring plaintiffs to use compensatory hours first also may have deprived plaintiffs of the opportunity to cash out at the time-and-one-half rate the accrued compensatory hours they were required to use before their annual leave.

The court takes no position at this time as to whether defendant acted willfully or in good faith, nor as to whether the proposed testimony of Messrs. Markel and Crawford would be persuasive. However, with regard to relevance, evidence that plaintiffs were required to use compensatory time before annual leave and suffered financial harm as a result would tend to make it more probable that defendant acted willfully or not in good faith in violating the FLSA. Such evidence tends to show that defendant may have recklessly disregarded its obligations under the FLSA to properly compensate plaintiffs for overtime worked, a fact of consequence to the determination of whether plaintiffs are entitled to liquidated damages. It also tends to show that defendant did not honestly intend to act in accordance with the FLSA when it established an overall overtime compensation scheme that may, in practice, have diminished the value of overtime hours earned. The court therefore holds that the testimony of Messrs. Markel and Crawford is relevant to the determination of whether defendant acted willfully or not in good faith in violating the FLSA.

Because the testimony of Messrs. Markel and Crawford is relevant and their testimony is not anticipated to be duplicative of other witnesses' testimony, their testimony will not be a waste of the court's time. Moreover, the testimony's probative value exceeds any possible prejudice to defendant.[4] *See* Fed. R.Evid. 403.

4. The court also recognizes that any holding to the contrary may be impermissible in the context

Because the testimony of Mr. Markel and Mr. Crawford is relevant and because its probative value is not substantially outweighed by unfair prejudice, their testimony is admissible at trial if it otherwise complies with the Federal Rules of Evidence.

### 2. Andrew LeBovidge

■ Plaintiffs propose to call Andrew Le-Bovidge to "demonstrate that the FAA is liable to the plaintiffs for liquidated damages and a third year of liability. For example, he will testify regarding the FAA's actions in collective bargaining and its pay practices with respect to controllers in the field." Pls.' Witness List 2. Defendant objects to the testimony of Mr. LeBovidge on the grounds that his testimony is irrelevant, prejudicial and a waste of time; that Mr. LeBovidge lacks personal knowledge of the matters about which plaintiffs seek to elicit his testimony; and that Mr. LeBovidge's testimony would constitute hearsay. *See* Def.'s Mot. 4; Fed.R.Evid. 402, 403, 602, 802.

Specifically, defendant argues that, to the extent that plaintiffs seek to have Mr. LeBovidge testify to negotiations relating to the 2006 collective bargaining agreement, Mr. LeBovidge lacks personal knowledge under Rule 602 because he was not involved in the 2006 negotiations and any testimony from him on this topic would constitute impermissible hearsay under Rule 802. Def.'s Mot. 5. With respect to the 2006 negotiations, plaintiffs state that "Mr. LeBovidge will not testify with respect to the 2006 contract negotiations to the extent that he does not have actual knowledge of those issues. Barry Krasner, Chief Negotiator during the 2006 negotiations, will present that testimony." Pls.' Resp. 6 n. 2. Defendant's objections under Rules 602 and 802 to Mr. LeBovidge's testimony regarding the 2006 contract negotiations to which Mr. LeBovidge was not a party are moot because plaintiffs have represented that they will not seek to elicit testimony from Mr. LeBovidge on the 2006 nego-

tiations "to the extent that he does not have actual knowledge of those issues." *Id.* If plaintiffs seek to elicit Mr. LeBovidge's testimony at trial relating to the 2006 negotiations, plaintiffs must first establish that Mr. LeBovidge has personal knowledge of the subject matter and that his testimony will not be duplicative of Mr. Krasner's testimony.

Regarding Mr. LeBovidge's testimony as to the collective bargaining process surrounding the 2009 contract, defendant argues that, although Mr. LeBovidge was involved in the 2009 collective bargaining process, that process is "not relevant to the FAA's decision regarding Mr. LeBovidge's authority to grant employee requests for compensatory time and credit hours, as that decision was made in 1996." Def.'s Mot. 5. Defendant also argues that this testimony would "not [be] relevant to FAA decisions concerning the calculation of the regular rate that were made no later than 2007." *Id.* Plaintiffs argue that Mr. LeBovidge's testimony regarding the 2009 negotiations is relevant to the question of whether defendant's actions were willful or in good faith and reasonable, insofar as Mr. LeBovidge was party to any discussions "with respect to the FAA's authority to provide for compensatory time and/or credit hours, as well as the FAA's decision to continue providing for compensatory time and/or credit hours after this Court's decision [of July 31, 2008]." Pls.' Resp. 5–6. Plaintiffs state that Mr. LeBovidge's testimony regarding the 2009 negotiations will be based on Mr. LeBovidge's actual knowledge and will not constitute hearsay. *Id.* at 6. Defendant responds that "an agency's decision to maintain the *status quo* following a trial court's finding of liability that is not yet final hardly demonstrates that it lacks good faith or a reasonable basis, especially when the same Court has found in the Government's favor with respect to the same issue in another case." Def.'s Reply 4.

of a bench trial. *See United States v. Kienlen*, 349 Fed.Appx. 349, 351 (10th Cir.2009) (unpublished) (holding "that excluding evidence in a bench trial under 'Rule 403's weighing of probative value against prejudice [is] improper'" (quoting *Gulf States Utils. Co. v. Ecodyne Corp.*,

635 F.2d 517, 519 (5th Cir.1981))); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir.1994) (stating that, in bench trials, "evidence should not be excluded under 403 on the ground that it is unfairly prejudicial").

Defendant cites no authority to support its contention that testimony regarding defendant's actions subsequent to its decisions that resulted in violations of the FLSA would not be relevant to the question of whether defendant acted willfully or in bad faith. The court agrees with plaintiffs that the discussions surrounding defendant's ongoing choice to maintain its practice of providing compensatory time and credit hours, particularly during the period after the court issued its Opinion of July 31, 2008, which held that this practice violated the FLSA, are relevant to the questions of willfulness and good faith, although the court neither decides at this time whether defendant acted willfully or in good faith, nor whether the proposed testimony of Mr. LeBovidge would be persuasive. Mr. LeBovidge's testimony with respect to the 2009 collective bargaining process is admissible if it otherwise complies with the Federal Rules of Evidence.

According to defendant, any testimony that Mr. LeBovidge might give regarding "FAA pay practices with respect to controllers in the field," is irrelevant to the calculation of damages in that "[t]he FAA's good faith and reasonableness in calculating plaintiffs' regular rate or determining that it had authority to grant employee requests for compensatory time or credit hours are not informed by its pay practices in areas for which the Court was not called upon to resolve liability." Def.'s Mot. 5–6. With respect to the FAA's pay practices, plaintiffs argue that Mr. LeBovidge's testimony regarding the FAA's provision of credit hours in lieu of overtime "will go to the question of whether the Agency violated its own rules and regulations regarding credit hours, which is relevant to the issues of liquidated damages and a third year of liability." Pls.' Resp. 6. As previously discussed, although the court takes no position as to whether defendant acted willfully or in good faith, nor on whether the proposed testimony of Mr. LeBovidge on the FAA's pay practices would be persuasive, the court views testimony surrounding the FAA's provision of credit hours rather than overtime pay as relevant to the issues of willfulness and good faith. *See supra* Part II.B.1. In particular, evidence that supports the contention that as a result of defendant's overtime pay practices, plaintiffs were deprived of the opportunity to cash out annual leave that expired or the compensatory hours that plaintiffs were required to use prior to using annual leave tends to make it more probable that defendant acted willfully or not in good faith in violating the FLSA.

Mr. LeBovidge's testimony as it relates to the FAA's overtime pay practices and 2009 collective bargaining process is relevant and is admissible provided it otherwise complies with the Federal Rules of Evidence.

### C. Plaintiffs' Motion to Exclude Witnesses

Plaintiffs move, pursuant to Federal Rule of Evidence 615, to "exclude defendant's witnesses James Whitlow, Larry Staley, Ellen Cook and Michael Mason from the trial, and to direct these witnesses not to confer among themselves before testifying, nor to read transcripts of the proceedings or take other steps to learn the substance of testimony given before they testify." Pls.' Mot. 1.

Defendant opposes plaintiffs' Motion to exclude witnesses on the ground that the Federal Rules of Evidence require "that once a party has made a valid request for sequestration, the Court must order the sequestration of *all* witnesses, with the exception of four categories of persons." Def.'s Opp'n 2. Defendant argues that "[p]laintiffs' request to exclude only a handful of witnesses on defendant's witness list, without citing any of the exceptions to sequestration set forth in the Rule, is improper and should be denied." *Id.* at 3. In the alternative, defendant "request[s] that the Court order the sequestration of all witnesses" except those permitted by Rule 615. *Id.* at 5. Counsel for defendant also "designate Larry Staley as defendant's representative, who should be exempted from sequestration pursuant to Fed.R.Evid. 615(b)," should the court order exclusion. *Id.* at 3.

Plaintiffs represent in their Reply that they "do not oppose sequestering all nonparty witnesses nor to the designation of Mr. Staley as the defendant's representative thereby exempting him from sequestration." Pls.' Opp'n Reply 1.

■ Federal Rule of Evidence 615 directs as follows regarding the exclusion of witnesses from the courtroom:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>
> (d) a person authorized by statute to be present.

Fed.R.Evid. 615. Rule 615 leaves the trial court no discretion; upon the request of a party "the court *must* order witnesses excluded." *Id.* (emphasis added).

Because the parties have invoked Rule 615 and agree upon exclusion, all witnesses shall be excluded that do not meet the requirements for one of the four exceptions in Rule 615. Mr. Staley will be permitted in the courtroom as defendant's designated representative under Rule 615(b), per the parties' agreement. *See* Def.'s Opp'n 3; Pls.' Opp'n Reply 1. The parties will have an opportunity at the pretrial conference to discuss which other witnesses will be permitted in the courtroom under the exceptions enumerated in parts (a)-(d) of Rule 615.

III. Conclusion

Plaintiffs' objection to the introduction of DX 1 (Letter of July 8, 1998) into evidence is OVERRULED.

Plaintiffs' objections to DX 9, 10, 17, 20 and 21 are MOOT because defendant withdrew these exhibits and plaintiffs withdrew their objections.

Plaintiffs' objections to DX 18 and DX 23 are MOOT because plaintiffs withdrew their objections.

Defendant's objections to the testimony of Robert Crawford and Lawrence Markel are OVERRULED. Defendant's objections to the testimony of Andrew LeBovidge are OVERRULED.

Plaintiffs' Motion to exclude witnesses is GRANTED. All witnesses shall be sequestered except for those who, as demonstrated by a party at the pretrial conference, are permitted in the courtroom under the exceptions enumerated in parts (a)-(d) of Rule 615. In addition, counsel shall not discuss with witnesses the substance of any trial proceedings that have occurred, or share with them trial transcripts.

Plaintiffs' Unopposed Motion for Leave to Admit Limited Deposition Transcripts at Trial is GRANTED.

As per the court's Order of November 28, 2011, any objection to exhibits, portions of deposition transcripts or witnesses not filed with the court on January 24, 2012, shall, if the objection is of a type that could reasonably have been identified at the time for these filings, be deemed waived absent a show of compelling reason for the failure. *See* Order of Nov. 28, 2011 at 3.

IT IS SO ORDERED.